WO                NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Prescott Lakes Community Association Incorporated,<br><br>Plaintiff,<br><br>v.<br><br>Auto-Owners Insurance Company, *et al.*,<br><br>Defendants. | No. CV-14-08201-PCT-JJT<br><br>**ORDER** |

At issue is Defendant Auto-Owners Insurance Company's ("Auto-Owners") Motion for Summary Judgment Regarding Morris Agreement (Doc. 40, Mot.), to which Plaintiff Prescott Lakes Community Association, Inc. (the "Association") filed a Response (Doc. 48, Resp.), and Auto-Owners filed a Reply (Doc. 51, Reply). The Court finds these matters appropriate for decision without oral argument. *See* LRCiv 7.2(f). For the reasons that follow, the Court grants in part and denies in part Defendant Auto-Owners' Motion for Summary Judgment as to the validity of the Settlement Agreement and Stipulated Judgment.

**I.     BACKGROUND**

The following facts are undisputed unless otherwise noted. The insurance dispute at issue arises out of claims asserted in an underlying construction defect lawsuit. *See Prescott Lakes Cmty. Assoc., Inc. v. Canavast Builders, Inc. et al.*, No. CV2011-01685 (the "underlying lawsuit"). The underlying lawsuit involved construction of Willow Park Estates – 23 duplex buildings with 26 single family units – at Prescott Lakes Community.

Willow Park Estates was built from 2004 to 2006, and in 2011, the Prescott Lakes Community Association filed the underlying lawsuit naming the following entities as defendants and alleging that they were involved in the development and sale of the property: Canavest Builders, Inc.; Canavest Development, LLC; Canavest Development II, LLC; The Canavest Group; and Willow Park/Canavest, LLLP. The Association alleges construction defects related to the property and claimed damages of $2,045,136.74 for the cost to repair all defects and $245,834.10 for interim repair costs. The Association also claims expert and attorney fees and costs, which it alleges are still accruing.

Auto-Owners issued an insurance policy to The Canavast Group and related entities that was effective August 1, 2004 through August 1, 2010. Canavest Development, LLC, Canavest Development II, LLC, and WPE/Canavest, LLLP were named insured on the policy from August 1, 2004 through August 1, 2006. In the underlying lawsuit, Auto-Owners provided a defense to its insured. It first reserved all of its rights in a 2012 reservation of rights letter; then on June 3, 2013, it issued an updated reservation of rights letter; and then on May 21, 2014, it issued another updated reservation of rights letter (the "*Munzer* letter").

Auto-Owners maintains that in the 2014 *Munzer* letter, it withdrew its reservation of rights with respect to certain claims and maintained its reservation as to the remaining claims. The *Munzer* letter included a section entitled "Withdrawal of Reservation of Rights as to Certain Claims," and, below that heading, a list of damages/repairs for which Auto-Owners maintains it specifically withdrew its reservation of rights. The Association objects to Auto-Owners' assertion and maintains that Auto-Owners did not specifically withdraw its reservation as to certain damages/repairs because the letter did not identify specific claims or amounts.

On September 24, 2014, the Association and the insureds/defendants in the underlying case entered into a *Morris* agreement under which the parties settled the claims and the Association obtained an assignment of all claims against Auto-Owners.

Under the *Morris* agreement, the parties entered into a stipulated judgment against Canavest Builders, Inc.; Canavest Development, LLC; Canavest Development II, LLC; The Canavest Group; and Willow Park/Canavest, LLLP for $2.5 million, and a judgment in the underlying case was entered on October 10, 2014.[1] The Association covenanted not to execute against the insureds/defendants in the underlying case. The judgment only provides one lump sum amount against all defendants. The Association alleges that the *Morris* agreement is valid and reasonable and that the sum set forth in the stipulated judgment is covered under the Auto-Owners' policies.

In its Controverting Statement of Facts, the Association states that, through Canavest's attorneys, it provided Auto-Owners with the following: Prescott Lakes/Willow Park Estate Association's Interim Repair Chart dated March 3, 2014; Nautilus General Contractors' Preliminary Estimate of Costs Willow Park Estates dated May 5, 2014; and Nautilus Building Consultants, Inc.'s Report of Findings for Willow Park Estates dated May 5, 2014.

In its Controverting Statement of Facts, the Association also sets forth the groups of interim repair invoices as listed in Auto-Owners' *Munzer* letter and states what the Association "guessed" Auto-Owners was referring to. The Association alleges that Auto-Owners did not set forth a specific sum for which it would indemnify Canavest regarding the repair invoices and that the repairs as Auto-Owners listed them excluded additional services and repairs listed in the original invoices. Auto-Owners further alleges that the original invoices did not itemize costs for individual repairs, but only listed one lump sum. The Court now resolves Auto-Owners' Motion for Summary Judgment regarding the *Morris* agreement.

///

///

///

---

[1] The Court refers to the settlement agreement and stipulated judgment together as the "*Morris* agreement" throughout this Order.

## II. LEGAL STANDARDS

### A. Summary Judgment

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when: (1) the movant shows that there is no genuine dispute as to any material fact; and (2) after viewing the evidence most favorably to the non-moving party, the movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1288–89 (9th Cir. 1987). Under this standard, "[o]nly disputes over facts that might affect the outcome of the suit under governing [substantive] law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" of material fact arises only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

In considering a motion for summary judgment, the court must regard as true the non-moving party's evidence if it is supported by affidavits or other evidentiary material. *Celotex*, 477 U.S. at 324; *Eisenberg*, 815 F.2d at 1289. The non-moving party may not merely rest on its pleadings; it must produce some significant probative evidence tending to contradict the moving party's allegations, thereby creating a question of material fact. *Anderson*, 477 U.S. at 256–57 (holding that the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968).

"A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Summary judgment must be entered 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *United States v. Carter*, 906 F.2d 1375, 1376 (9th Cir. 1990) (quoting *Celotex*, 477 U.S. at 322).

### B. Liability Insurance Contracts

In a liability insurance contract, the insurer agrees to indemnify the insured if liability under the policy is established. *United Servs. Auto. Ass'n v. Morris*, 741 P.2d 246, 250 (Ariz. 1987). The insurer "obligates itself to defend any claim potentially covered by the policy." *Id*. The insured also has an obligation under the insurance policy and must cooperate with the insurer when the insurer defends the insured in accordance with the insurer's contractual obligation. *Id*. The insured "may not settle with the claimant without breaching the cooperation clause [in the insurance policy] unless the insurer first breaches one of its contractual duties." *Id*. "If the insurer performs its obligations, the cooperation clause applies with full force, and settlement by the insured constitutes a breach of the [insurance] policy." *Id*. at 250–51.

Where the insurer asserts a coverage defense and defends the insured under a reservation of rights, not unconditionally assuming liability under the policy, there is no breach of the cooperation clause if the insured enters into a settlement agreement with the claimant without the insurer's consent. *Id*. at 252. Under *Morris*, an agreement can be made that allows a plaintiff and defendant, "whose insurer will only defend under a reservation of rights, to agree that judgment may be entered against the defendant in a specified amount with the understanding that the plaintiff will not execute on the judgment against the defendant." *Munzer v. Feola*, 985 P.2d 616, 618 (Ariz. Ct. App. 1999). The plaintiff may then "proceed against the defendant's insurer, and if the plaintiff prevails on the coverage issue, it may collect its judgment from the insurer to the extent that the judgment is what a reasonable and prudent defendant would have paid to settle the case." *Id*. at 618–19. Where the insurer issues a reservation of rights, it must "fairly inform the insured of the insurer's position." *Desert Ridge Resort LLC v. Occidental Fire & Cas. Co. of N. Carolina*, No. CV-14-01870-PHX-DLR, 2015 WL 6600079, at *3 (D. Ariz. Oct. 7, 2015) (quoting *Equity Gen. Ins. Co. v. C & A Realty Co.,* 715 P.2d 768, 771 (Ariz. Ct. App. 1985)).

## III. ANALYSIS

### A. *Munzer* Letter

In *Munzer*, the Arizona Court of Appeals considered the validity of a *Morris* agreement where an insurer was only defending some, but not all, of the claims against the insured under a reservation of rights. 985 P.2d at 616. *Munzer* involved the insurers of an insured law firm that originally offered to defend the firm with a reservation of rights as to all claims, but later, partially withdrew their reservation of rights as to the claim for general damages while continuing to defend the malpractice claim under a reservation of rights. *Id.* at 618. The claimants and the insured law firm entered into a settlement agreement for all claims with a judgment that was approximately all of the claimant's alleged damages entered against the insured law firm. *Id.* at 619. The court held that the *Morris* agreement was valid only as to the claims for which the insurer reserved its rights. *Id.* at 619–21. Because the insurer withdrew its reservation of rights as to the general damages claim against the insured law firm, the insured law firm breached the cooperation clause of the insurance contract and voided the policy as to that claim by entering into the *Morris* agreement. *Id.* at 621. The court did not hold that the entire *Morris* agreement was invalid, but only that part involving the claims for which the insurer withdrew its reservation of rights.

Auto-Owners argues that its May 21, 2014 *Munzer* letter clearly set forth that it was withdrawing its reservation of rights as to certain damages and repairs. (Reply at 5–9.) Auto-Owners contends that, as a result, the *Morris* agreement is invalid because it includes claims that Auto-Owners withdrew its reservation of rights to and thus the insured, Canavest, breached the cooperation clause. The Association argues that Auto-Owners' *Munzer* letter was illusory and did not unconditionally agree to indemnify Canavast for any certain claim. (Resp. at 9.) The Association contends that, from the letter, it was unascertainable what Auto-Owners was specifically indemnifying because the damages/repairs listed in the letter did not identify which invoices they were associated with and the damages/repairs referred to were specific items included as part

of lump sum invoices for which there were no individual costs. (Resp. at 11–16.) The Association also argues that the *Munzer* letter was ineffective because the damages/repairs listed could only be made in conjunction with other repairs for which Auto-Owners did not withdraw its reservation of rights. (Resp. at 11.)

This case presents a situation similar to that in *Munzer* because Auto-Owners changed its position from defending under a complete reservation of rights to withdrawing its reservation of rights as to certain claims in its *Munzer* letter. (*See Munzer* letter at 15.) Despite the Association's contention that the *Munzer* letter was illusory, the Court finds that, taken as a whole, the *Munzer* letter fairly informed a reader of average intelligence that Auto-Owners was withdrawing its reservation of rights as to certain damages/repairs. *See Equity Gen. Ins. Co.*, 715 P.2d at 770–71. The first page of the *Munzer* letter states:

> Auto-Owners further recognizes, however, that some of the claims may be covered, in which case Auto-Owners will indemnify those entities that qualify as insureds for those claims. Auto-Owners has determined that it will continue to provide this defense to the Canavest entities under a reservation of rights for certain claims as asserted herein, but withdraws its reservation of rights as to other claims.

(*Munzer* letter at 1.)

The *Munzer* letter then includes a section under the heading "**WITHDRAWAL OF RESERVATION OF RIGHTS AS TO CERTAIN CLAIMS**," which states:

> Based upon the information that Auto-Owners has obtained during the course of its investigation in this matter, and subject to all of the other applicable terms, provisions and exclusions contained in the policy, it appears that coverage may be available to the extent that any insured is found liable for the following damages/repairs, as have been claimed by plaintiff in this lawsuit and set forth in the above-noted reports.

(*Munzer* letter at 15.) The letter then lists the types of damages/repairs, such as stucco and roof tile, and specific repairs identified by date, type of repair, and Bates number. (*See Munzer* letter at 15–17.)

After the list of the various repairs, the letter clarifies Auto-Owners' withdrawal of its reservation of rights:

> Auto-Owners does not reserve its rights as to those items of resultant damage, *as itemized above*, and will agree to indemnify any insured entity should it be found liable for this resultant damage and the associated repairs for such damages, *as itemized above*. This withdrawal of the reservation of rights includes only those bolded items listed above, as set forth in the Nautilus Estimate of Costs, and the specific repairs designated above, as included in the Interim Repair Chart. Further, this withdrawal of the reservation of rights applies only to such damage, as set forth above, that occurred prior to 8/1/06.

(*Munzer* letter at 17) (emphasis in original). The *Munzer* letter goes on to discuss that Auto-Owners continues to reserve its rights relating to such damage, "*other than as identified above for which Auto-Owners has expressly withdrawn its reservation of rights*." (*Munzer* letter at 19) (emphasis in original). Finally, the letter cites to *Morris* and *Munzer*, noting that any settlement the insured enters into for any claim for which Auto-Owners "has accepted coverage or withdrawn its reservation of rights" will violate the conditions of the insurance policy. (*Munzer* letter at 20.)

The Association points to language in the *Munzer* letter that it contends evinces its illusory nature. The Association refers to the following language: "some of the claims *may* be covered" (*Munzer* letter at 1; Resp. at 10) (emphasis added); "it appears that *coverage may be available to the extent* that any insured is found liable for the following damages/repairs" (*Munzer* letter at 15; Resp. at 10) (emphasis added); and "*[t]o the extent* that the faulty work itself and/or the faulty product itself has resulted in damage to other property, Auto-Owners does not reserve its rights" (*Munzer* letter at 17; Resp. at 10) (emphasis added). The Association also points to language on page 18 of the *Munzer* letter, under the heading "**CONTINUING RESERVATION OF RIGHTS**," and notes that Auto-Owners never defined the specified scope of the phrase "your work" as included in the policy (*Munzer* letter at 18; Resp. at 10–11). Finally, the Association

1 points to the above-quoted language on page 19 of the *Munzer* letter, contending that it
2 states that Auto-Owners may not cover anything. (Resp. at 11.)

3 The Court does not find persuasive the Association's references to the somewhat
4 vague language scattered throughout the *Munzer* letter and the language under the
5 "Continuing Reservation of Rights" section. The *Munzer* letter clearly provided a section
6 entitled "Withdrawal of Reservation of Rights as to Certain Claims," provided a detailed
7 list of damages/repairs, and stated that Auto-Owners "does not reserve its rights as to
8 those items of resultant damage, *as itemized above*." (*Munzer* letter at 15–17) (emphasis
9 in original). Moreover, the *Munzer* letter instructed the insured to advise Auto-Owners if
10 the insured believed that Auto-Owners misstated or omitted any material facts. (*Munzer*
11 letter at 19.) The Court determines that, taken as a whole, the *Munzer* letter fairly
12 informed the Association of Auto-Owners' intent to withdraw its reservation of rights as
13 to certain, listed damages/repairs. Accordingly, Auto-Owners withdrew its reservation of
14 rights as to certain claims, barring a settlement agreement as to those claims. *See Munzer*,
15 985 P.2d at 619–21.

16 **B.** ***Morris* Agreement**

17 Auto-Owners argues that because it withdrew its reservation of rights as to certain
18 claims in its *Munzer* letter, the insured was barred from entering into a settlement
19 agreement as to those claims, and because the *Morris* agreement included those claims,
20 the *Morris* agreement is invalid as a matter of law. (Mot. at 9–13.) Although the *Morris*
21 agreement did not distinguish between covered and non-covered claims and only
22 provided for a lump-sum payment, the *Morris* agreement is not invalid as a whole. As in
23 *Munzer*, the *Morris* agreement is valid with respect to those claims that Auto-Owners had
24 reserved its rights, but invalid with respect to the claims for which Auto-Owners had
25 withdrawn its reservation of rights pursuant to the *Munzer* letter. *See Munzer*, 985 P.2d at
26 621.

27 The Court agrees with Auto-Owners that because the *Morris* agreement in this
28 case does not allocate between covered and non-covered claims, this case is different than

*Munzer*, where the two claims at issue and the associated damages were clearly delineated. In this case, the Court cannot yet determine what portion of the $2.5 million *Morris* agreement is attributable to covered and non-covered claims or claims identified in the *Munzer* letter. This uncertainty, however, will be resolved in the next steps in this case and does not require the invalidation of the entire *Morris* agreement, as Auto-Owners contends.

## IV. CONCLUSION

The *Munzer* letter fairly informed a reasonable reader, including the Association, that Auto-Owners was withdrawing its reservation of rights as to some claims, and the *Morris* agreement is valid as to only those claims for which Auto-Owners reserved its rights. The Court recognizes the continuing uncertainty regarding the scope of the withdrawal of Auto-Owners' reservation of rights in the *Munzer* letter and thus, what the *Morris* agreement could include. Given what is before the Court thus far, it cannot yet make that determination, but will do so in the next steps of this case.

When parties have entered into a *Morris* agreement, neither the fact nor amount of liability in the settlement or stipulated judgment is binding on the insurer unless the claimant can show that the settlement was reasonable and prudent under all the circumstances. *See Morris*, 741 P.2d at 253; *Munzer*, 985 P.2d at 618–19. The parties are given the opportunity to present their arguments in a reasonableness hearing – an evidentiary hearing "where the stipulated damages amount, or stipulated judgment, in a . . . Morris agreement . . . is subject to review or the amount has been left open and is to be determined by the trial judge or fact finder without reference to a figure stipulated to by the parties." *Himes v. Safeway Ins. Co.*, 66 P.3d 74, 79 (Ariz. Ct. App. 2003). Thus, while uncertainty with regard to the *Morris* agreement still exists, such uncertainty will be resolved through the litigation of the underlying claims, including the determination of the insurance policy coverage and the reasonableness of the *Morris* agreement.

The Court acknowledges Auto-Owners' request to strike the Declaration of William Shore (Doc. 50), submitted in support of the Association's Response. (*See*

1 Doc. 52 at 3, 4, 7.) Because the Court did not consider the Declaration in its resolution of Auto-Owners' Motion, the Court denies Auto-Owners' request to strike the Declaration as moot.

Finally, the Court finds that there is no question of material fact as to the validity of the settlement agreement and stipulated judgment. The Court finds that the *Morris* agreement is valid as to those claims for which Auto-Owners reserved its rights and invalid as to those claims for which Auto-Owners withdrew its rights. The Court thus declines to invalidate the entire *Morris* agreement.

IT IS THEREFORE ORDERED granting in part and denying in part Defendant Auto-Owners' Motion for Summary Judgment Regarding Morris Agreement (Doc. 40). The *Morris* agreement is valid as to those claims for which Auto-Owners agreed to defend under a reservation of rights and invalid as to claims for which Auto-Owners withdrew its reservation of rights.

IT IS FURTHER ORDERED resetting discovery deadlines pursuant to the Court's September 24, 2015 Order (Doc. 54), as follows:

1. Fact discovery shall be completed by **March 11, 2016**.
2. All discovery must be completed by **March 11, 2016**.
3. The parties must complete all pre-trial disclosure required under Fed. R. Civ. P. 26(a)(3), of all exhibits to be used and all witnesses to be called at trial, on or before **January 15, 2016**.
4. Good Faith Settlement discussions are to be held no later than **April 15, 2016**.
5. All dispositive motions shall be filed no later than **May 13, 2016**.
6. All other aspects of the Court's scheduling Order (Doc. 54) remain in effect.

Dated this 16th day of December, 2015.

_____
Honorable John J. Tuchi
United States District Judge